Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 2907 | **DATE** | 11/4/2002 |
| **CASE TITLE** | Leyva vs. Walls | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order denying the petitioner's petition for a writ of habeas corpus and his motion for appointment of counsel. Any pending motion in this case is terminated as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | 3 number of notices | **Document Number** |
| | No notices required. | | |
| ✓ | Notices mailed by judge's staff. | NOV 05 2002 | |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 11/4/2002 date mailed notice | |
| MPJ | courtroom deputy's initials | MPJ mailing deputy initials | |
| | Date/time received in central Clerk's Office | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES ex rel. ESMELIX LEYVA, )
                                      )
              Petitioner,             )
                                      )
      v.                              )
                                      ) No. 02 C 2907
JONATHAN WALLS, Warden, Menard        )
Correctional Center,                  )
                                      )
              Respondent.             )

DOCKETED
NOV 0 5 2002

**MEMORANDUM OPINION AND ORDER**

Esmelix Leyva was convicted in Illinois state court of home invasion and attempted aggravated criminal sexual assault of his girlfriend's daughter. He appealed, lost, and filed a petition for leave to appeal to the Illinois Supreme Court, which was denied. He files a petition for a writ of *habeas corpus* under 28 U.S.C. § 2254, raising four claims: (1) that the state trial court abused its discretion when it admitted evidence of another sexual assault committed by Mr. Leyva; (2) that there was insufficient evidence of attempted aggravated criminal sexual assault to sustain his conviction; (3) that the state trial court should have instructed the jury that battery was a lesser-included offense of attempted aggravated criminal sexual assault; and (4) that the prosecutor's closing and rebuttal argument denied him a fair trial. I deny the petition.

I.

In 1998, Mr. Leyva lived across the street from Hattie K., whom he had met at church and whom he was dating.[1] Hattie's twenty-two-year-old daughter, J.K., was living with Hattie for the summer. On June 14, 1998, J.K. was at home with her mother and Mr. Leyva. At about 11:30, J.K. went to bed, and Mr. Leyva left the house for about twenty minutes, then returned to Hattie's house. He asked Hattie to come back to his house, and once they were back at Mr. Leyva's house, he snatched Hattie's keys from her hands, left the room, and locked Hattie in his room from the outside.

Mr. Leyva went back to Hattie's house where J.K. was sleeping and woke her. He knocked on her door and told her that he needed to talk to her in the bathroom. Mr. Leyva told J.K. that his relationship with her mother was a "cover-up," and that Hattie was actually involved in a romantic relationship with another neighbor across the street. When J.K. told Mr. Leyva that she did not believe him, he locked the bathroom door and pushed J.K.'s hand away when she tried to unlock it. Mr. Leyva told J.K. that he was "madly in love" with her and wanted to "make love to her." Mr. Leyva told J.K. to take off her clothes, lie down on the floor, and "show him her 'pussy.'" J.K. refused and started to cry, and Mr.

---

[1] I take the statement of facts from the decision of the Illinois Appellate Court, Ex. D, because its factual findings are presumptively correct unless rebutted by clear and convincing evidence, see 28 U.S.C. § 2254(e)(1), which is not offered here.

2

Leyva took out a black object shaped like a gun,[2] which J.K. believed to be a gun, and threatened to kill both of them.

J.K. frantically reached for the door, and a physical struggle ensued. J.K. and Mr. Leyva pushed, punched and scratched each other. Mr. Leyva put J.K. in a headlock and wrestled her to the floor. Mr. Leyva pointed the gun-shaped object at J.K.'s head and told her that if she stopped screaming he would get off her. J.K. stopped screaming and Mr. Leyva again told her to take off her clothes and "show him her 'pussy.'" J.K. cried and pleaded with Mr. Leyva to let her go. Mr. Leyva reached into his pocket and took out a pipe and a white substance, which he proceeded to smoke. While Mr. Leyva was smoking, J.K. punched him and ran out the bathroom door.

Hattie testified that when she realized she was locked in, she called to a neighbor for help, but ultimately used a comb to unlock the door and get out of Mr. Leyva's apartment. She ran toward her house, where she heard a woman screaming, and realized that it was her daughter. She rang her doorbell (Mr. Leyva had taken her keys), and J.K. opened the door and told Hattie that Mr. Leyva had "tried" to rape her. Mr. Leyva said that J.K. was "crazy" and ran away. Hattie and J.K. called the police. When Mr. Leyva returned to

---

[2] Actually, according to Mr. Leyva's brief on direct appeal, it was a piece of glass shaped like a gun, with a handle and a muzzle. Ex. A at 11.

3

Hattie's house later that night, Hattie called the police again and Mr. Leyva was arrested.

When confronted by an assistant state's attorney, Mr. Leyva denied any wrongdoing. He originally told police that the scratches on his face were from shaving, but later told the assistant state's attorney that they were caused by "gangbangers." When the assistant state's attorney introduced herself to Mr. Leyva, he said that his former girlfriend, M.K., was a "United States Attorney" and that he went to jail because of her. The assistant state's attorney recognized M.K.'s name and knew her as another assistant state's attorney.

At trial, the details of the incident with M.K. were admitted over Mr. Leyva's objection. In June 1993, M.K. was living with her father in a second floor apartment. She returned home one night in June at about 9:30 p.m., and after she parked her car, she was approached by Mr. Leyva, whom M.K. knew to be a friend of her father. Mr. Leyva told M.K. that he needed to talk to her about her father, saying that her father owed money to "gangbangers" and that because he had failed to pay, her house could be firebombed. Mr. Leyva asked M.K. if she had any money and suggested that she go with him, but M.K. refused and went into her house.

Mr. Leyva returned shortly and rang M.K.'s doorbell. He appeared out of breath and asked to be let in because the "gangbangers" were outside, and M.K. let him in. Once inside, he

4

locked the window, looked outside, and asked for a glass of water. M.K. returned with a glass of water in one hand and her keys in the other. She gave the water to Mr. Leyva, and he threw it in her face and grabbed her keys. Mr. Leyva began to curse, called M.K. a "bitch," and told her that he would kill her.

M.K. asked Mr. Leyva what he wanted, and he said that he was going to rape her and that she should take off her clothes. Mr. Leyva reached toward his back, and M.K. thought that he had a gun. M.K. and Mr. Leyva began to fight, and Mr. Leyva wrestled her to the floor. Standing over her, he ordered M.K. to remove her clothes and called her a "fucking bitch." M.K. begged him to stop, but removed her clothes, then Mr. Leyva removed his clothes and attempted to have intercourse with M.K., saying that she was his "fantasy" and that he had wanted to do this for a long time.

Eventually, after lying on the couch together, Mr. Leyva allowed M.K. to get up and get a glass of water and get dressed in her bedroom. M.K. heard footsteps at the door and realized her father was home, and she went to the door to stop him because she believed that Mr. Leyva had a gun. After M.K. promised that she would meet him outside, Mr. Leyva left through the back door, and M.K. and her father called the police. Mr. Leyva fled, and as a result he was not arrested until February 1994, nine months later.

Mr. Leyva did not testify at trial, and he did not call any witnesses. His counsel argued that his intent was innocent, that he

5

attempted to have a consensual sexual relationship with J.K., and that the state's witnesses were not credible. He claimed that the police and the state's attorneys were trying to frame him because of his sexual assault on M.K., an assistant state's attorney, six years before. He was convicted by a jury of home invasion and attempted aggravated criminal sexual assault and sentenced to fifty and fifteen years respectively.

II.

I may grant *habeas* relief only if Mr. Leyva shows that he is in custody in "violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a). A petitioner is entitled to *habeas* relief from a state court conviction only if he establishes that the state court adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 405-13 (2000).

In addition, I may not grant *habeas corpus* relief unless the petitioner has exhausted his state court remedies. *See* 28 U.S.C. § 2254(b)(1)(A). A requirement of exhaustion is proper presentment of the petitioner's claims to the state court, which includes raising them in a petition for discretionary review in the Illinois Supreme

Court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 847-48 (1999). Failure to raise an issue in a petition for leave to appeal to the Illinois Supreme Court constitutes a procedural default, *id.* at 848, which bars federal review unless the petitioner demonstrates cause for the default and actual prejudice as a result of the violation, or demonstrates that the failure to consider the claims will result in a fundamental miscarriage of justice. *See Rodriguez v. Scillia*, 193 F.3d 913, 917 (7th Cir. 1999).

A.

Mr. Leyva claims that there was insufficient evidence to sustain his conviction for attempted aggravated criminal sexual assault because there was no evidence that he actually attempted sexual penetration. "On habeas review, [I] will reverse the jury verdict based on the insufficiency of the evidence only if the record contains no evidence from which a rational trier of fact could find guilt beyond a reasonable doubt." *Mason v. Godinez*, 47 F.3d 852, 857 (7th Cir. 1995). I view the evidence in the light most favorable to the government. *Id.*

To sustain a conviction for attempted aggravated criminal sexual assault, the state must prove that Mr. Leyva intended to commit aggravated criminal sexual assault and committed an act that constitutes a substantial step toward the commission of that offense. *See People v. Todd*, 607 N.E.2d 1189, 1197 (Ill. 1993); 720 ILCS 5/8-4. Criminal sexual assault is defined as "an act of sexual

7

penetration by the use of force or threat of force." 720 ILCS 5/12-13(a)(1).[3] The offense is considered aggravated criminal sexual assault if one of the aggravating factors in 720 ILCS 5/12-14 is present. Here, the aggravating factor was the display or use of a dangerous weapon or an object used to lead the victim to reasonably believe it was a dangerous weapon, § 12-14(a)(1), *viz.*, the piece of black glass shaped like a gun. *See* Ex. C at 51.

Mr. Leyva argues that there was insufficient evidence of his intent to commit aggravated criminal sexual assault because there was no evidence that he actually tried to commit an act of sexual penetration. However, Mr. Leyva may have had the intent to commit a sexual assault without actually committing it; attempt is an inchoate offense. The intent to commit a sexual assault "may be inferred from the circumstances of the assault." *People v. Enoch*, 522 N.E.2d 1124, 1135 (Ill. 1988). The Illinois court found that the evidence that Mr. Leyva tricked J.K. and locked her in the bathroom with him, referred to a specific sexual act and ordered her to disrobe, pointed a gun-shaped object at her, wrestled with her and put her in a head-lock when she refused to comply, and did not leave voluntarily when J.K. asked him to stop was sufficient

---

[3] "Sexual penetration" is defined as "any contact, however slight, between the sex organ or anus of one person by an object, the sex organ, mouth or anus of another person, or any intrusion, however slight, of any part of the body of one person or of any animal or object into the sex organ or anus of another person, including but not limited to cunnilingus, fellatio or anal penetration." 720 ILCS 5/12-12(f).

8

evidence of intent. Ex. D. at 7-8. It distinguished *People v. Rayfield*, 525 N.E.2d 253 (Ill. App. Ct. 1988), in which the court found insufficient evidence of intent to commit sexual assault where the defendant did not order the victim to disrobe, did not refer to the act of sexual intercourse, and left voluntarily when his advances were refused. *Id.* at 255; *see* Ex. D at 7-8. On the evidence in the record, a rational jury could have concluded that Mr. Leyva intended to sexually assault J.K.

Mr. Leyva also argues that there was insufficient evidence of a substantial step to support a conviction for attempt, and on direct appeal he argued that he withdrew from his course of action when he stopped to smoke. However, the evidence showed that, prior to pausing to smoke, Mr. Leyva had already lured J.K. into the bathroom and locked her in, announced his desire to have sex with her, threatened her, and wrestled her to the ground. The Illinois court found that this went beyond mere preparation, *see* Ex. D. at 9-10, so Mr. Leyva's actions had ripened to an attempt before he began to smoke. There was evidence in the record from which a rational jury could have concluded that Mr. Leyva took a substantial step toward committing an aggravated criminal sexual assault. He is not entitled to *habeas* relief on this basis.

B.

Mr. Leyva also claims that the state court erred in allowing evidence of his assault on M.K. because it was not relevant to his

intent or *modus operandi*, and because the evidence of the M.K. assault was so overwhelming that it became a mini-trial within his trial. Ordinarily, evidence admitted in violation of a state law does not provide a basis for *habeas* relief; "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). The federal rule governing the admission of evidence of prior bad acts, Fed. R. Evid. 404(b), was inapplicable to Mr. Leyva's state prosecution, and the violation of the Illinois rule is not itself a denial of due process. *See Watkins v. Meloy*, 95 F.3d 4, 6 (7th Cir. 1995). Where the petitioner's complaint is that the state court failed to limit the prosecution's evidence (rather than improperly limiting the petitioner's evidence, *e.g.*)[4], "the only constitutional principle to which the [petitioner] can appeal is a catch-all sense of due process, and the appeal almost always fails." *Id.* at 6-7 (citations omitted). The Seventh Circuit

---

[4] In reply, Mr. Leyva argues that he was prejudiced by the trial court's exclusion of exhibits that demonstrated that he was innocent. The exhibits to which he refers are two notarized letters to the trial judge from Hattie K. stating that Mr. Leyva should not be punished for a domestic dispute that "has nothing to do with sex, aggravated assault, robbery, kidnapping, or home invasion." *See* Exs. A and B attached to Ex. G. Arguments raised for the first time in reply are waived. *See United States v. Matchopatow*, 259 F.3d 847, 851 (7th Cir. 2001). Nonetheless, the exclusion of the evidence did not violate the Constitution. The evidence was at best only marginally exculpatory, and the trial court was within its discretion to exclude these exhibits, which were not based on personal knowledge because Hattie K. was not present until after the assault on J.K. had occurred.

has held that "[s]omething worse than a garden-variety violation of the standard of 404(b) must be shown to cross the constitutional threshold." *Id.* at 7. Where evidence is relevant, the petitioner will be hard-pressed to demonstrate a constitutional violation. *See Koo v. McBride*, 124 F.3d 869, 875 (7th Cir. 1997).

Here the Illinois Appellate Court held that the evidence of the assault on M.K. was admissible to show Mr. Leyva's intent and *modus operandi*. The court noted the similarities between the incidents--the victims were roughly the same age, Mr. Leyva used a ruse about each victim's parent to gain access to the victim, he assaulted each victim in her home, and he physically attacked each victim when she tried to escape--and concluded that they were sufficiently similar to demonstrate Mr. Leyva's lack of innocent intent and his *modus operandi*. Ex. D. at 10-12. The trial court gave a limiting instruction before the evidence was introduced and again before deliberations. *See* Ex. C at 40.

The Supreme Court declined in *Estelle* to decide whether the admission of other crimes evidence for the purpose of demonstrating propensity would violate due process, *see* 502 U.S. at 484 n.5, but held that there was no due process violation where the evidence was relevant to an issue other than propensity and the jury was instructed not to consider it for propensity, *id.* at 481, 484-85. The Seventh Circuit has also declined to find a violation of due process where evidence of past sexual assaults was admitted in a

rape case where the evidence was probative of something other than mere propensity and where the trial court gave limiting instructions to minimize the potential prejudice. *See Koo*, 124 F.3d at 875. The evidence relating to the M.K. assault was relevant to show Mr. Leyva's lack of innocent intent, and the jury was instructed to consider it only for that purpose or to show *modus operandi*, so Mr. Leyva was not denied due process by its admission.

C.

Mr. Leyva argues that the state court erred in failing to give an instruction on battery as a lesser included offense of attempted aggravated criminal sexual assault. Although he unsuccessfully made this argument in the Illinois Appellate Court, he did not raise it in his petition for leave to appeal to the Illinois Supreme Court, so he has procedurally defaulted it. *See O'Sullivan*, 526 U.S. at 848. He does not offer cause and prejudice to excuse this default, and "[a]bsent such a showing, the defaulted claim is reviewable only where a refusal to consider it would result in a fundamental miscarriage of justice." *See United States ex rel. Bell v. Pierson*, 267 F.3d 544, 551 (7th Cir. 2001). In response to the state's answer, Mr. Leyva argues that "[f]undamental fairness requires that this issue be addressed because as the record shows there w[as] no forced penetration upon the alleged victim." Resp. at 3-4. Even if I construe this as a claim that a fundamental miscarriage of justice would occur from the failure to hear his claim, he does

12

not support the claim with new evidence of actual innocence. *See* Bell, 267 F.3d 544 at 551 (citing *Schlup v. Delo*, 513 U.S. 298, 315, 327 (1995)). I cannot grant relief on a procedurally defaulted claim.

Even if I were to consider the merits, however, Mr. Leyva cannot demonstrate his entitlement to a lesser included offense instruction for battery. The Supreme Court has held that a state court is required to give a lesser included offense instruction "only on those offenses that have been deemed to constitute lesser included offenses of the charged crime." *Hopkins v. Reeves*, 524 U.S. 88, 96 (1998). The Court has "never suggested that the Constitution requires anything more." *Id.* at 96-97. The Illinois Appellate Court held that Mr. Leyva was not entitled to a battery instruction because battery is not a lesser included offense of attempted aggravated criminal sexual assault. *See* Ex. D. at 12-13 (citing *People v. Mays*, 437 N.E.2d 633, 637 (Ill. 1982) (holding that battery by bodily harm is not a lesser included offense of rape, statutory predecessor to criminal sexual assault, because rape may occur without bodily harm and battery instruction tendered required bodily harm); *People v. Sutton*, 624 N.E.2d 1189, 1201 (Ill. App. Ct. 1993) (holding that aggravated battery of a physically handicapped person is not a lesser included offense of attempted aggravated criminal sexual assault because aggravated battery requires intentional bodily harm)). The Appellate Court

also cited *People v. Leonard*, 526 N.E.2d 397 (Ill. App. Ct. 1988), which held that battery was not a lesser included offense of aggravated criminal sexual assault because battery is a specific intent crime and sexual assault is a general intent crime. *See id.* at 404. However, Mr. Leyva was charged with *attempted* aggravated criminal sexual assault, and attempt is a specific intent crime. *See Enoch*, 522 N.E.2d at 1135. Nonetheless, Mr. Leyva cites no case, and my own research reveals none, holding that battery has been deemed to constitute a lesser included offense of attempted aggravated criminal sexual assault.

A lesser included offense is one that is established by proof of the same or less than all of the facts, or a less culpable mental state (or both), than that which is required under the charged offense. 720 ILCS 5/2-9. Under Illinois law, "[a] person commits battery if he intentionally or knowingly without legal justification and by any means, (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual." 720 ILCS 5/12-3(a). Mr. Leyva was charged with attempting to commit an act of sexual penetration by the use of force or threat of force while using or displaying an object reasonably believed to be a dangerous weapon. This attempt could be completed without actually causing bodily harm or making physical contact of an insulting or provoking nature, so battery is

not an included offense, and Mr. Leyva was not constitutionally entitled to a battery instruction.

D.

Finally, Mr. Leyva claims that he was prejudiced by improper prosecutorial remarks in closing argument. To establish a constitutional violation from improper closing argument that does not infringe a particular trial right, such as the right of the defendant not to testify, "it 'is not enough that the prosecutors' remarks were undesirable or even universally condemned.' The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citations omitted). I first look at the remark in isolation to determine whether it was improper; if so, I consider whether, in light of the evidence, arguments by defense counsel, opportunity of defense counsel to respond to the remarks, and the weight of the evidence against the petitioner, the remark deprived the petitioner of a fair trial. *See Aliwoli v. Carter*, 225 F.3d 826, 829-30 (7th Cir. 2000).

The first remark to which Mr. Leyva objects is the prosecution's characterization of him as a "jerk" and a "creep" during rebuttal. This kind of name-calling is inappropriate, but the Illinois Appellate Court concluded that it was limited and relatively harmless in light of the evidence against Mr. Leyva.

Although Mr. Leyva had no opportunity to respond to the name-calling, it is unlikely that these isolated comments by the prosecution affected the jury's assessment of the evidence.

The prosecution stated that "reasonable doubt is not a mystical entity" and "has to be supported by a reason." Mr. Leyva claims that this was an improper comment on the reasonable doubt standard. The Illinois Appellate Court held that it was not improper, but even if it were improper, see *United States v. Alex Janows & Co.*, 2 F.3d 716, 723 (7th Cir. 1993) ("It is settled law in this circuit that attorneys should not attempt to define reasonable doubt to a jury."), it was harmless. The evidence against Mr. Leyva was so strong that there is no reasonable likelihood that the jury was improperly influenced by the prosecutor's statements about reasonable doubt.

Mr. Leyva did not testify or put on any witnesses, but during closing argument, his attorney called the prosecution's case "science fiction," "fantasy," "smoke and mirrors," and "a shell game." He attacked the credibility of the state's witnesses, and he argued that the prosecution and police were exacting "revenge" on him for his previous assault of M.K., who was an assistant state's attorney. In rebuttal argument, the prosecution said:

> You would have to believe that a 53-year old Jehovah's Witness, a 22-year old college student, a 76-year old man, Jehovah's Witness, a 30-something [assistant state's attorney], a 28-year old [assistant state's attorney], a 30-year veteran of the Chicago Police Department, [D]etective McInerney, a 20-something nice young officer from the district

16

>     just doing his job . . . . You'd have to believe that they all
>     called each[ ]other up and planned to frame this guy. . . .
>     You'd have to believe they were all lying . . . ."

Ex. D at 15. This argument was not improper; it was invited by defense counsel's claim that Mr. Leyva was being framed and that the state's witnesses were incredible. "It is not only permissible but advisable in closing argument to refute meritless accusations." *United States v. Reed*, 2 F.3d 1441, 1450 (7th Cir. 1994). *See also Darden*, 477 U.S. at 182 (holding that prosecution's comments did not deprive defendant of fair trial where they were invited by or responded to arguments by defense counsel).

Finally, Mr. Leyva objects to the prosecution's comments about Mr. Leyva's flight after the M.K. incident. The trial court allowed the details of the M.K. assault, but excluded details of the arrest that followed it, including the fact that, because Mr. Leyva fled, he was not arrested for nine months. Ex. D. at 5-6. In closing argument, the prosecution said: "Something else important to note about [M.K.'s] testimony. Why was she being truthful? Why did she tell you . . . I didn't see a gun. You know [defendant] wasn't picked up until 9 months afterwards, that's when [the assistant state's attorney] first spoke to him." Ex. D at 14. Mr. Leyva's counsel objected, but the trial court overruled the objection. In rebuttal, the prosecution said: "And you look at the prior actions, you look at the subsequent action. If he had such an innocent

17

reason for being there, why is he fleeing. Why is he leaving, why did he flee for 9 months in the first case." *Id.*

The state court held that both of these comments were invited by defense argument: the first by argument that M.K. was not believable, and the second by argument that Mr. Leyva's intent was innocent. *Id.* The first statement was made before defense counsel had made a closing argument, so it is hard to see how it was invited. Nonetheless, in light of the strength of the evidence against Mr. Leyva, the isolated comment that his arrest was nine months after the M.K. incident did not infect his entire trial with unfairness. The second comment was invited by the defense argument that Mr. Leyva's intent was innocent. "[E]vidence of flight and concealment is admissible to show consciousness of guilt, as well as guilt itself." *United States v. Kord*, 836 F.2d 368, 372 (7th Cir. 1988). But even if uninvited, both references were brief, and defense counsel had the opportunity to respond to the first reference. The evidence against Mr. Leyva was so strong that no reasonable jury would have been swayed to convict him on the basis of these two remarks. Because none of the prosecutorial statements had an unfair effect on the trial as a whole, Mr. Leyva was not denied due process.

III.

Mr. Leyva's petition for habeas corpus and motion for appointment of counsel are DENIED.

ENTER ORDER:

*Elaine E. Bucklo* (signature)

**Elaine E. Bucklo**
United States District Judge

Dated: November 4, 2002